Nicholas P. Roxborough, Esq. (SBN 113540)
Joseph C. Gjonola, Esq. (SBN 241955)
Ryan R. Salsig, Esq. (SBN 231016)
Donna M. Leung, Esq. (SBN 305955)
ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, California 91367
Tel: (818) 992-9999
Fax: (818) 992-9991

Attorneys for Plaintiff
PERSONNEL STAFFING GROUP,
LLC, DBA MVP STAFFING

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSONNEL STAFFING GROUP, LLC, DBA MVP STAFFING, a Florida limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PROTECTIVE INSURANCE COMPANY, an Indiana Corporation, and DOES 1 through 50,<br><br>　　　　Defendant. | Case No.  2:19-cv-06728-ODW-JEM<br><br>**PERSONNEL STAFFING GROUP, LLC'S OPPOSITION TO DEFENDANT PROTECTIVE INSURANCE COMPANY'S MOTION TO DISMISS OR STAY PURSUANT TO FRCP 12(b)(1)**<br><br>DATE:　　　　　October  21, 2019<br>TIME:　　　　　1:30 p.m.<br>LOCATION:　　Courtroom 5D |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     FACTS ............................................................................................... 3

III.    ARGUMENT ..................................................................................... 5

        A.   The Court May Not Dismiss This Action Under The Federal
             *Forum Non Conveniens* Doctrine Because There Is No Foreign
             Forum ......................................................................................... 5

        B.   The Court May Not Dismiss This Action Under *Colorado River*
             Because Personnel's Claims Are Common Law Breach Of
             Contract And Tort Claims That Seek Damages ........................... 6

        C.   A *Colorado River* Stay Is Not Appropriate Because The Indiana
             Action Is Not Substantially Similar To The California Action
             And None Of The Other Factors Weigh In Favor Of A Stay ...... 7

             1.   The Indiana Action is not substantially similar to the
                  California Action because Personnel has not alleged any
                  facts, causes of action, or claims for relief in Indiana ........ 8

             2.   None of the *Colorado River* factors weighs in favor of a stay ........... 12

                  a.   There is no res judicata over which one court has
                       obtained jurisdiction, which weighs against abstention ............. 12

                  b.   Any piecemeal litigation was created by Protective
                       filing its compulsory counterclaims in Indiana and a
                       stay will not prevent this Court from being required to
                       adjudicate Personnel's claims, which precludes a stay ............. 13

                  c.   The federal forum is not any more, or less, inconvenient
                       than the parties litigating this multi-state insurance
                       dispute in any other forum, which weighs against a stay ........... 15

                  d.   This case was filed first and neither case has progressed
                       to any extent, which weighs against a stay. ............................... 17

                  e.   This case requires routine application of well-settled

state law and does not entail any special circumstances, which weighs against a stay ........................................................ 18

        f.    Indiana cannot adjudicate any of Personnel's claims because none have been or must be filed there, which makes Indiana an inadequate forum, and weighs against a stay ......................................................................... 19

        g.   Personnel did not engage in any forum shopping, and the only reason this Motion is before the Court is because Protective forum shopped by filing its compulsory counterclaims in Indiana, which weighs against a stay ............................................................................ 21

   D.   The Court Should Not Entertain Any Argument Regarding A Transfer ..................................................................................... 22

IV.   CONCLUSION ................................................................................ 25

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,

4

843 F.2d 1253 (9th Cir. 1988) ................................................................. 13, 21

5

*American Dredging Co. v. Miller*, 510 U.S. 443 (1994) ............................. 2, 5

6

*American Zurich Ins. Co. v. Country Villa Service Corp.*, No.

7

14-cv-03779-RSWL-AS, 2015 WL 4163008 (C.D. Cal. Jul. 9,

2015) ........................................................................................................... 24

8

*Atlantic Marine Const. Co., Inc. v. U.S. District Court for*

9

*Western Dist. of Texas*, 571 U.S. 49 (2013) ............................................ 6, 22

10

*Brito v. New United Motor Mfg., Inc.*, No. C 06-06424-JF, 2007

11

WL 1345197 (N.D. Cal. May 8, 2007) ......................................................... 9

12

*Calisher & Associates, Inc. v. RGCMC, LLC*, No. CV08-

13

06523-MMM(Ex), 2008 WL 4949041, *4 (C.D. Cal. Nov. 17,

2008) ........................................................................................................... 24

14

*Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457

15

(4th Cir. 2005).............................................................................................. 8

16

*Colorado River Water Conservation Dist. v. United States*, 424

17

U.S. 800 (1976)................................................................................... passim

18

*Creative Technology, Ltd. v. Aztech System Pte.*, Ltd., 61 F.3d

19

696 (9th Cir. 1995) ....................................................................................... 6

20

*Fresh Pac International, Inc. v. Gowan Group*, No. 16CV539-

21

GPC(BLM), 2016 WL 4563716 (S.D. Cal. Sept. 1, 2016) ........................... 6

22

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d

23

1088 (9th Cir. 1998) ..................................................................................... 6

24

*Germuhendislik Taahüt Proje, Montag Nakliye, Turizm, Insaat,*

25

*Imlat Ve Ticaret Limited Sirketi v. Mems Precision Technology,*

*Inc.*, No. CV 13-5019 PSG (PJWx), 2013 WL 12205502 (C.D.

26

Cal. Oct. 8, 2013)........................................................................................ 15

27

*Global Décor, Inc. v. Cincinnati Ins. Co.*, No. CV 11-2602-JST

28

(FMOx), 2011 WL 2437236 (C.D. Cal. Jun. 16, 2011) .......................... 6, 23

*Goodin v. Vendley*, 356 F.Supp.3d 935 (N.D. Cal. 2018) ................................ 9

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988) .................................................................................................. 8

*Herbert v. VWR International, LLC*, 686 Fed. Appx. 520 (9th Cir. 2017) .................................................................................................. 6

*Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002) .................................... 8

*Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908 (9th Cir. 1993) .................................................................................................. 8

*Jackpot Harvesting, Inc. v. Applied Underwriters, Inc.*, 33 Cal.App.5th 719 (2019) ............................................................................ 24

*Jackson v. Texaco*, No. C88-2337 DLJ, 1990 WL 294231, (N.D. Cal. Nov. 21, 1990) ............................................................................ 6

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .................. 23

*Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494 (5th Cir. 2002) ............................................................................................ 17

*Luxor Cabs, Inc. v. Applied Underwriters, Inc.*, 30 Cal.App.5th 970 (2018) .................................................................................................... 24

*MacGregor Yacht Corp. v. State Compensation Insurance Fund*, 63 Cal.App.4th 448 (1998) .............................................................. 18

*Melt Franchising, LLC v. PMI Enterprises, Inc.*, No. CV 08–4148 PSG (MANx), 2008 WL 4811097 (C.D. Cal. Oct. 27, 2008) .................................................................................................... 13, 18

*Miskow v. Boeing Co.*, 664 F.2d 205 (9th Cir. 1981) .............................. 6

*Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160 (9th Cir. 2017) .................................................................................................. 9

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) ...................................................................... 14, 18

*Moss v. Nui Phao Mining Joint Venture Co., Ltd.*, No. 10-1634 SC, 2010 WL 3222377 (N.D. Cal. Aug. 13, 2010) ................................ 6

v

*Moss v. Tiberon Minerals Ltd.*, No. 07-2732 SC, 2007 WL 3232266 (N.D. Cal. Nov. 1, 2007) ................................................................... 6

*Murphy v. Uncle Ben's Inc.*, 168 F.3d 734 (5th Cir. 1999)........................................... 13

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) ................................................. 8, 21

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal.App.5th 1096 (2018) ............................................................................. 24

*Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034 (9th Cir. 1995) ......................................................... 24

*Notrica v. State Compensation Insurance Fund*, 70 Cal.App.4th 911 (1999)................................................................................................. 18

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ................................................. 2, 5, 6

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)........................................... 2, 6

*Quest Nutrition, LLC v. Nutrition Excellence, Inc.*, No. 18-cv-06976-ODW (E), 2019 WL 1789880 (C.D. Cal. Apr. 23, 2019)...................... 2, 6, 8, 9

*Radian Int'l, LLC v. Alpina Ins. Co.*, C-04-4537 SC, 2005 WL 1656884, *1 (N.D. Cal. Jul. 14, 2005) ................................................................... 24

*R.R. Street & Co., Inc. v. Transport Insurance Co.*, 656 F.3d 966 (9th Cir. 2011) ................................................................. 11, 13, 18, 19

*ScripsAmerica, Inc. v. Ironridge Global, LLC*, 56 F.Supp.3d 1121 (C.D. Cal. Nov. 3, 2014) ................................................... 8, 13, 18, 20

*Security Officers Service, Inc. v. State Compensation Insurance Fund*, 17 Cal.App.4th 887 (1993)............................................................... 18

*Seneca Insurance Company, Inc. v. Strange Land, Inc.*, 865 F.3d 835 (9th Cir. 2017) ................................................................... passim

*Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th Cir. 2009)......................................................................................... 6

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637 (1993) ................................................................................. 4

*Tackitt v. Superior Court of California ex rel. County of Madera*, No. 13-CV-01292-AWI-SAB, 2013 WL 5970383 (E.D. Cal. Nov. 8, 2013) .......................................................... 9, 11

*Tafflin v. Levitt*, 493 U.S. 455 (1990) ............................................ 20

*Technology Credit Corp. v. N.J. Christian Academy, Inc.*, 307 F.Supp.3d 993, 1007 (N.D. Cal. 2018) ...................................... 25

*Tillack v. Rahman*, No. SSACV 18-01560 AG (ADSx), 2018 WL 6380889 (C.D. Cal. Nov. 5, 2018) .................................... 6, 23

*Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364 (9th Cir. 1990) ............................................................................ passim

*Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689 (9th Cir. 2009) ................................. 6

## STATUTES

28 U.S.C. §1404 ........................................................................ passim

California Code of Regulations, title 10, § 2268 ........................ 23

California Insurance Code § 11658 ............................................ 23

Federal Rule of Civil Procedure Rule 12(b)(1) ...................... 1, 22

Federal Rule of Civil Procedure Rule 12(b)(2) ...................... 2, 22

Federal Rule of Civil Procedure 12(b)(3) .............................. 2, 22

Federal Rule of Civil Procedure 13(a)(1) .................................. 1

Indiana Trial Rule 13(A) ..................................................... 11, 12

## OTHER AUTHORITIES

Philips & Stevenson, Federal Civil Procedure Before Trial, California & 9th Cir. Edition (The Rutter Group April 2019 Update), ¶4:846 .......................................... 5, 22

# I.   **INTRODUCTION**

On June 28, 2019, Personnel Staffing Group, LLC ("Personnel") filed its Complaint for workers' compensation insurance claims-mishandling in the Los Angeles Superior Court.  [Dkt. No. 1, Ex. 1 (the "California Action")].  At the time the Complaint was filed, neither party had ever sued the other party in any court.  The insurance bad faith causes of action alleged in the Complaint address nearly $45 million in improperly handled *California* workers' compensation claims insured by Protective Insurance Company ("Protective").

On August 2, 2019, *Protective* invoked this Court's removal jurisdiction, by asserting that "[t]he Court has subject matter jurisdiction over this action because there is diversity jurisdiction…."  [*Id.*, p. 1, ¶1].  Rather than filing its **compulsory counterclaims** in this Court, as it was required to do under Federal Rule of Civil Procedure 13(a)(1), on August 3, 2019, Protective filed in Indiana Superior Court its claims for breach of the same polices alleged in the California Action.[1]  [Decl. Hudson, ¶7, Ex. E (the "Indiana Action")].  Now, after invoking this Court's "subject matter jurisdiction,"  Protective moves to "stay or dismiss" this federal action under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject matter jurisdiction."  [*See* Notice of Motion, p. 1].  In short, seven days after Protective invoked this Court's jurisdiction, it asked this Court to abdicate its "virtually unflagging" obligation to exercise the very jurisdiction it just invoked.

Protective's Rule 12(b)(1) Motion asks, alternatively, for three things: (1) that the Court dismiss this case under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) [Motion, p. 14:03]; (2) that the Court stay this case under *Colorado River* [*Id.*]; and, (3) that the Court dismiss this case "for *forum non conveniens*" [Motion, p. 19:06].  The first and third of these requests are dead on arrival.  First, federal courts have power to dismiss based on abstention principles *only* where the relief sought is equitable or otherwise discretionary.  The Court *may*

---

[1] All further references to the Federal Rules of Civil Procedure are to an identified "Rule."

1    *not do so in a common law action for damages.  Quackenbush v. Allstate Ins. Co.*,

2    517 U.S. 706, 731 (1996); *Quest Nutrition, LLC v. Nutrition Excellence, Inc.*, No. 18-

3    cv-06976-ODW (E), 2019 WL 1789880, *8 (C.D. Cal. Apr. 23, 2019, J. Wright)

4    ("power to dismiss… based on abstention principles only where relief being sought is

5    equitable or otherwise discretionary").  Personnel's causes of action in the California

6    Action are common-law breach of contract and tort claims seeking damages.  [Dkt.

7    No. 1, Ex. 1, p. 12].  Therefore, Protective's request that this case be dismissed under

8    *Colorado River* must be denied as a matter of law.  Second, the federal doctrine of

9    *forum non conveniens* applies "only in cases where the alternative forum is abroad,"

10   i.e., where an alternative *inter-national* forum is available, not where an alternative

11   *inter-state* forum is available.  *American Dredging Co. v. Miller*, 510 U.S. 443

12   (1994), 449 fn. 2, *citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981).

13   Indiana state court is not an inter-national forum.  Therefore, Protective's request that

14   this case be dismissed under the doctrine of *forum non conveniens* must be denied as

15   a matter of law.

16        The remainder of Protective's argument in support of a *stay* under *Colorado*

17   *River* is an indiscriminate mishmash of facts and principles that would be properly at

18   issue in a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) or

19   for improper venue under Rule 12(b)(3), or a motion to transfer under 28 U.S.C.

20   §1404, or in a conflict-of-law or choice-of-law argument.[2]  The facts presented

21   throughout the Motion establishing where the contract was negotiated and technically

22   formed, whether Indiana, Illinois, or California law should be applied, where the

23   parties are incorporated or have their headquarters, from which state payments

24   originated, in which state premium calculations were made, where people were sitting

25   when they made phone calls, *et cetera*, *et cetera*, have no bearing on the analysis this

26   _____

27   [2] Protective does not ask the Court to transfer pursuant to 28 U.S.C. § 1404.  It appears that
     Protective's purpose is to encourage the Court to transfer the case to Indiana *sua sponte* pursuant to

28   the "mandatory forum selection clause" without Personnel ever having notice of a 28 U.S.C. § 1404
     transfer motion.  The forum-selection provision is discussed in Section III(D) below.

Court must perform.  *Colorado River* requires exceptional circumstances that warrant this Court <u>not</u> exercising its subject-matter jurisdiction.  It simply is not the case that the more references Protective is able to make to Indiana, the more warranted is a *Colorado River* stay.[3]

When the proper *Colorado River* analysis is performed, it is evident that (1) there is no parallel state court action pending because Personnel *has not asserted any allegations, causes of action, or claims for damages in the Indiana Action* and (2) this is a run-of-the-mill diversity action that does not present a hint of the "extraordinary circumstances" necessary for a stay.  For these reasons, all relief requested in the Motion must be denied.

## II.   <u>FACTS</u>

The workers' compensation policies alleged in the Complaint covered Personnel's employees in 42 states.  [Decl. Barnett, ¶3.  Employees working and injured in California were the vast majority of the risks insured by the policies.  The actual California payroll for the first policy was approximately $210 million, and approximately $480 million for the second.  [*Id.*, ¶5.  The Indiana payroll was approximately $1.3 million for the first policy and $3.1 million for the second.  [*Id.*].  As of June 2019, 6,579 claims had been made under the policies; 4,351 were claims made by California employees, 16 were claims by Indiana employees.  [*Id.*, ¶7.  The total incurred amount of the claims under the policies for all states is $58,070,069, of which $44,836,585 is for claims by California employees.  [*Id.*, ¶ 8.  Indiana claims amount to $45,731.  [*Id.*]

Protective issued the California policy pursuant to a Certificate of Authority issued by the California Insurance Commissioner.  [Decl. Roxborough, ¶ 8.  The policies were not one giant policy covering 42 states, nor could they be, owing to the variances between the workers' compensation insurance systems and requirements of

---

[3] For what it is worth, Protective wrote "Indiana" in the Motion 174 times, or, on average, about 7 per page.

the several states.  Rather, as a matter of law, the policy is akin to 42 individual state policies sold at the same time.[4]  Dozens of state-specific endorsements are attached to the underlying policies that conform the general policy provisions to the individualized laws and requirements of the varying workers' compensation systems of the states in which risks were insured.  However, *neither the polices nor the attached endorsements have any choice-of-law or forum-selection provision*.[5]

With respect to California, the state-specific endorsements include the "Policy Amendatory Endorsement-California" restricting coverage and altering the premium obligations [Decl. Barnett, ¶4, Ex. E]; the "Duty to Defend-California" altering the duty to defend to accord with California law [*Id.*, Ex. F]; the "Employers' Liability Coverage Amendatory Endorsement-California" altering the insurance provided [*Id.*, Ex. G]; the "Optional Premium Increase Endorsement-California" allowing for premium changes as provided by California law [*Id.*, Ex. H]; the "California Cancellation Endorsement" altering the manner in which cancellation of the policy may be made to accord with California law [*Id.*, Ex. I]; and the "California Large Risk Deductible Endorsement," which governs deductible premium credits, deductible amounts, and reimbursement obligations for amounts paid for California claims under the deductible [*Id.*, Ex. J].

---

[4] In multi-state workers' compensation policies, coverage for each state is treated as a separate policy subject to the law of the state in which the risk is insured.  "[T]he rights created [by a contract of casualty insurance] are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship…."  *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637, 646 (1993).  "Where a multiple risk policy insures against risks located in several states, it is likely that the court will view the transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved."  *Id.*  This is especially so when "the primary policy contains individual amendatory endorsements for" different states.  *Id.* at 647.

[5] Protective contends the indemnity agreement contains a "mandatory forum selection clause."  [*See, e.g.,* Motion, p. 2:26; 16:10; 17:26; 18:14].  This provision is not relevant to the *forum non conveniens* motion seeking *dismissal* or at all to *Colorado River*.  Therefore, they are discussed only briefly in Section III(D), below, where Personnel establishes that the General Agreement of Indemnity is an illegal contract that is a nullity, among other things.

4

1  Personnel will not enumerate specifically each of the non-California state-

2  specific endorsements attached to the policies.  Simply flipping through the

3  endorsements reflects dozens of state-specific endorsements for nearly every state

4  covered by the policies.  [*Id.*, Exs. A – D].

5  ### III.   ARGUMENT

6  The Court must deny each and every request made in the Motion.  The Court

7  may not dismiss this action under the *forum non conveniens* doctrine because there is

8  no inter-national forum proposed, and may not transfer because such relief was not

9  requested.  The Court may not dismiss this action under *Colorado River* because

10  Personnel's claims are for damages.  The Court may not stay this action under

11  *Colorado River* because Personnel has not asserted any claims in the Indiana Action,

12  thereby precluding a finding of substantial similarity.  Further, *none* of the other

13  *Colorado River* factors weigh in favor of a stay.  Rather, this is a run-of-the-mill tort

14  and breach of contract diversity case in which Protective is playing procedural games

15  in order to delay accountability for its conduct.

16  **A.  The Court May Not Dismiss This Action Under The Federal *Forum Non***

17  ***Conveniens* Doctrine Because There Is No Foreign Forum.**

18  Protective asks the Court to dismiss this action under the federal *forum non*

19  *conveniens* doctrine "in favor of proceedings in the Indiana Court."  [Motion, p.

20  19:06].  Protective skips over any analysis of whether the doctrine could even apply

21  in these circumstances and goes right into showing that Indiana is an adequate forum

22  and that the balance of interests favors dismissal.  This approach is fatally flawed

23  because the federal doctrine of *forum non conveniens* applies "only in cases where the

24  alternative forum is abroad," i.e., where an alternative *inter-national* forum is

25  available and preferable, not where an alternative *inter-state* forum is available.

26  *American Dredging*, 510 U.S. at 449 fn. 2, *citing Piper Aircraft*, 454 U.S. at 253-254.

27  This is basic hornbook law.  Philips & Stevenson, Federal Civil Procedure

28  Before Trial, California & 9th Cir. Edition (The Rutter Group April 2019 Update),

¶4:846 ("[t]he first requirement is that an alternative forum be available in the ***foreign country***") (bold and italics supplied), *citing Piper Aircraft* at 254.  Every single *forum non conveniens* case Protective cites considered the adequacy of an ***international*** forum, not whether one state court is better than another's.  *See Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 693 (9th Cir. 2009) ("Poland was an adequate alternative forum"); *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (Yap); *Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 667 (9th Cir. 2009) (Baja California Sur); *Jackson v. Texaco*, No. C88-2337 DLJ, 1990 WL 294231, *3 (N.D. Cal. Nov. 21, 1990) (Korea); *Fresh Pac International, Inc. v. Gowan Group*, No. 16CV539-GPC(BLM), 2016 WL 4563716, *8 (S.D. Cal. Sept. 1, 2016) (Mexico); *Moss v. Tiberon Minerals Ltd.*, No. 07-2732 SC, 2007 WL 3232266 at *2 (N.D. Cal. Nov. 1, 2007) (Canada); *Herbert v. VWR International, LLC*, 686 Fed. Appx. 520 (9th Cir. 2017) (Indonesia); *Moss v. Nui Phao Mining Joint Venture Co., Ltd.*, No. 10-1634 SC, 2010 WL 3222377, at *5 (N.D. Cal. Aug. 13, 2010) (Canada); *Miskow v. Boeing Co.*, 664 F.2d 205, 208 (9th Cir. 1981) (Canada); *Creative Technology, Ltd. v. Aztech System Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995) (Singapore).[6]

Indiana state court is not an alternative forum *that is abroad*.  Therefore, Protective's request to dismiss this action under *forum non conveniens* must be denied as a matter of law.

**B. The Court May Not Dismiss This Action Under *Colorado River* Because Personnel's Claims Are Common Law Breach Of Contract And Tort Claims That Seek Damages.**

Federal courts have power to dismiss based on abstention principles *only* where the relief sought is equitable or otherwise discretionary, but *may not do so in a common-law action for damages.  Quackenbush*, 517 U.S. at 731; *Quest Nutrition,*

---

[6] *Global Décor, Inc. v. Cincinnati Ins. Co.*, No. CV 11-2602-JST, 2011 WL 2437236 (C.D. Cal. Jun. 16, 2011); *Tillack v. Rahman*, No. SSACV 18-01560 AG (ADSx), 2018 WL 6380889 (C.D. Cal. Nov. 5, 2018); and *Atlantic Marine Const. Co., Inc. v. U.S. District Court for Western Dist. of Texas*, 571 U.S. 49 (2013) are 28 U.S.C. §1404 transfer cases, which Protective has not requested.

1   *LLC*, 2019 WL 1789880, *2 ("power to dismiss…cases based on abstention

2   principles only where relief being sought is equitable or otherwise discretionary").

3   Personnel's tort and breach of contract claims here seek damages only.  [Dkt. No. 1,

4   Ex. 1, p. 12].  Therefore, Protective's request that this case be dismissed under

5   *Colorado River* must be denied as a matter of law.

6       **C.   A *Colorado River* Stay Is Not Appropriate Because The Indiana Action Is**

7         **Not Substantially Similar To The California Action And None Of The**
        **Other Factors Weigh In Favor Of A Stay.**

8         "[T]he federal courts have a 'virtually unflagging obligation…to exercise the

9   jurisdiction given them,' including in cases involving parallel state litigation."

10   *Seneca Insurance Company, Inc. v. Strange Land, Inc.*, 865 F.3d 835, 841 (9th Cir.

11   2017), *quoting Colorado River*, 424 U.S. at 813.  "Generally 'the pendency of an

12   action in the state court is no bar to proceedings concerning the same matter in the

13   Federal court having jurisdiction….'"  *Id.*  "Abdication of the obligation to decide

14   cases can be justified…only in the exceptional circumstances where the order to the

15   parties to repair to state court would clearly serve an important countervailing

16   interest."  *Id.*  Only in "exceedingly rare' circumstances" do "considerations of wise

17   judicial administration" or "conservation of judicial resources and comprehensive

18   disposition of litigation" counsel in favor of abstention.  *Id.*, *quoting Colorado River*

19   at 817.

20         If the Court concludes that the California Action and the Indiana Action are

21   substantially similar, it evaluates whether "exceptional circumstances" exist,

22   warranting federal abstention.  The Court is to evaluate the following:

23         (1) which court first assumed jurisdiction over any property at stake; (2)

24         the inconvenience of the federal forum; (3) the desire to avoid piecemeal
        litigation, (4) the order in which the forums obtained jurisdiction; (5)

25         whether federal law or state law provides the rule of decision on the

26         merits; (6) whether the state court proceedings can adequately protect the
        rights of the federal litigants; (7) the desire to avoid forum shopping; and

27         (8) whether the state court proceedings will resolve all issues before the

28         federal court.

*Id.* at 841-842.  Due to the "strong presumption ***against*** federal abstention," the Court's task is "***not*** to find some substantial reason for the *exercise* of federal jurisdiction by the District Court." *Id.* (bold and italics supplied).  Rather, the Court's task is to ascertain "whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 842 (italics by the court).  "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Id.*, *quoting Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) ("*Madonna*").

As described below, the Indiana Action is not substantially similar to this case because Personnel *has not asserted any claims in Indiana and the Indiana Action cannot resolve any of Personnel's claims*.  This being the case, the Court cannot have "'full confidence' that the parallel state proceeding will end the litigation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993), *citing Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988).

> **1. The Indiana Action is not substantially similar to the California Action because Personnel has not alleged any facts, causes of action, or claims for relief in Indiana.**

"The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *ScripsAmerica, Inc. v. Ironridge Global, LLC*, 56 F.Supp.3d 1121, 1147 (C.D. Cal. Nov. 3, 2014), *quoting Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005).  Suits are sufficiently parallel "if the two proceedings are 'substantially similar.'" *Id.*, *quoting Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  "[I]f the district court has a substantial doubt as to whether the state proceedings will resolve the federal action, the doubt precludes the granting of a *Colorado River* stay.'" *Id.* (internal brackets omitted), *quoting Intel*, 12 F.3d at 913.  "Only where a court finds no substantial doubt that the parallel proceeding will resolve all issues does the court then evaluate a non-exclusive, complex set of factors." *Quest Nutrition* at *9, *citing Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002).

1    "[S]tate and federal proceedings are substantially similar if they arise out of the
2    same alleged conduct and seek to vindicate the same rights." *Goodin v. Vendley*, 356
3    F.Supp.3d 935, 944 (N.D. Cal. 2018); *see also Montanore Minerals Corp. v. Bakie*,
4    867 F.3d 1160, 1170 (9th Cir. 2017), as amended on denial of reh'g and reh'g en banc
5    (Oct. 18, 2017) ("proceedings are substantially similar because they both…attempt to
6    accomplish the same goal"); *Brito v. New United Motor Mfg., Inc.*, No. C 06-06424-
7    JF, 2007 WL 1345197, *3 (N.D. Cal. May 8, 2007) (state and federal proceedings
8    "'substantially similar' when they arise out of the same alleged ***conduct***") (bold and
9    italics supplied).  In *Tackitt v. Superior Court of California ex rel. County of Madera*,
10   No. 13-CV-01292-AWI-SAB, 2013 WL 5970383, *3 (E.D. Cal. Nov. 8, 2013) the
11   District Court compared: (1) the causes of action ***asserted by the plaintiff*** in the state
12   court action to the causes of action ***asserted by the plaintiff*** in the federal court action
13   and concluded that the federal-action claims were analogues of the state-action
14   claims; (2) the factual allegations alleged ***by the plaintiff*** in the state court action to
15   the factual allegations alleged ***by the plaintiff*** in the federal action; (3) the relief
16   sought ***by the plaintiff*** in the federal action to the relief sought ***by the plaintiff*** in the
17   state-court action and concluded that the federal relief was "a subset of the broader
18   array of relief sought in the State Court Action"; and (4) analyzed whether a judgment
19   against the ***plaintiff*** in the state court would be *res judicata* over the ***plaintiff's*** claims
20   raised in the federal court.  The court concluded "[g]iven the nearly identical factual
21   allegations, legal claims and relief sought, as well as the preclusive effect that a
22   judgment in one court would have over the claims raised in the other court, the Court
23   finds that this action and the State Court action are substantially similar." *Id.* at *4.
24       Protective's Motion  hides from the similarity analysis.  Instead, it relies
25   exclusively on mis-characterizing this first-filed lawsuit as a "spin-off" of a "more
26   comprehensive state litigation" [Motion, p. 15:26], concluding, without analysis or
27   legal support, that "the same basic issue of whether the parties complied with their
28   respective obligations" [Motion, p. 16:02] makes the cases substantially similar.  This

1  first-filed case, filed in the state in which $44 million of claims arose, is not a "spin-

2  off" of anything in any sense of the words.  Moreover, the inquiry is whether the

3  alleged misconduct and goals are the same in both actions, not whether the same

4  contract is at issue in both actions.  Protective's argument that the cases involve "the

5  same basic issues" asks the Court to imagine how much simpler the two cases would

6  be if *Personnel had asserted its claims in Indiana,* even though it did not.  Personnel

7  is unaware of any authority, and Protective has not cited any, for the proposition that

8  the federal court should abstain merely because the claims pending in federal court

9  could have been filed in a state court.  The fact remains that Personnel did not file its

10  claims in Indiana.

11      Personnel was the first of the parties to file **any action against the other party**

12  **in any forum**.  On July 28, 2019, it filed the Complaint pending before this Court in

13  the Los Angeles Superior Court.  [Dkt. No. 1, Ex. 1].  The Complaint alleges two

14  causes of action: (1) that *Protective* breached the polices by failing to handle workers'

15  compensation claims appropriately, thereby damaging *Personnel*, and (2) that

16  *Protective* tortiously breached the covenant of good faith and fair dealing by failing to

17  handle workers' compensation claims appropriately as a pattern and practice of

18  operation, thereby damaging *Personnel*.  [*Id.*, Ex. 1, ¶¶31 and 36].  Rather than

19  asserting its *compulsory counterclaims* here, as required by Rule 13, Protective filed

20  an action in Indiana state court seven days before it filed this Motion.  [Decl. Hudson,

21  ¶7, Ex. E].  Protective's complaint in Indiana asserts four "Counts": (1) that

22  *Personnel* breached the polices by failing to pay amounts owing thereunder, thereby

23  damaging *Protective* [*Id.*, Ex. E, ¶19]; (2) that *Personnel* breached an Indemnity

24  Agreement, thereby damaging *Protective* [*Id.*, ¶24]; (3) that *Personnel* breached a

25  Collateral Agreement, thereby damaging *Protective* [*Id.*, ¶29]; and (4) for a

26  declaratory judgment that *Personnel* is obligated to pay $22,214,897 [*Id.*, ¶39].

27  ***Personnel has not filed any claims, cross-claims, or counterclaims*** asserting a

28  breach of the policies in the Indiana state court, does not allege any wrongdoing there,

and does not seek any damages there or in any other court on the planet.[7]  Therefore, Personnel's claims in this action cannot be adjudicated in Indiana and cannot be "substantially similar" to the Indiana Action.

Finally, the Court is to look at the potential *res judicata* effect of an Indiana judgment on *Personnel's* California claims.  If an Indiana judgment would not have a *res judicata* effect on this Court's determination of *Personnel's* Complaint, the Court must find that there is a "substantial doubt" that the parallel proceeding will "resolve all of the issues" in Personnel's California Complaint.  *Tackitt*, 2013 WL 5970383, *3.  Personnel does not assert any cause of action in the Indiana Action.  Therefore, the claims Personnel asserts here cannot be adjudicated by the Indiana court.  This being the case, the only way that Personnel's affirmative claims here could be adjudicated fully in the Indiana Action is if the claims Personnel asserts here were compulsory counterclaims in the Indiana Action, i.e., if Personnel's affirmative claims here would be precluded by its failure to assert those claims in Indiana.

Personnel was not obligated to assert in Indiana the claims that it asserts here under the Indiana compulsory-counterclaim statute.  Therefore, a judgment in Indiana will not preclude Personnel from litigating its claims here following an Indiana judgment.  Indiana Trial Rule 13(A), titled "Compulsory Counterclaims," requires that

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction…that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

However, Indiana Trial Rule 13(A)(1) makes clear that "[b]ut, the pleader need not state the claim if: (1) *at the time the action was commenced the claim was the subject of another pending action*…."  As noted above, Personnel asserted its affirmative

---

[7] The court may not hypothecate claims that Personnel might have filed, or might file in the future, in the Indiana Action.  "Courts generally rely on the state of affairs at the time of the *Colorado River* analysis."  *R.R. Street & Co., Inc. v. Transport Ins. Co.*, 656 F.3d 966, 982 (9th Cir. 2011).

1   claims here on June 28, 2019 when it filed the Complaint in Los Angeles Superior

2   Court.  [Dkt. No. 1, Ex. E, p. 1].  The Indiana Action was initiated on August 3, 2019.

3   [Decl. Hudson, ¶7, Ex. E].  Therefore, Personnel's claims relating to the policies were

4   "the subject of another pending action" "at the time [the Indiana Action] was

5   commenced," and are not compulsory counterclaims.

6         For these reasons, it is manifest that resolution of the Indiana Action will not

7   "resolve all," or ***any***, of Personnel's claims against Protective and the cases are not

8   substantially similar.  This precludes this Court, as a matter of law, from granting a

9   *Colorado River* stay.  The Court need not consider any other *Colorado River* factor.

10         **2.  None of the *Colorado River* factors weighs in favor of a stay.**

11         Even if the Court were to conclude that the Indiana Action is substantially

12   similar to this action, proper evaluation of the factors demonstrates that there are no

13   exceptional circumstances justifying a stay.  Every *Colorado River* factor weighs

14   against a stay.  There is no real property involved in either case.  A stay will not limit

15   or reduce the piecemeal litigation that ***Protective created*** by filing its compulsory

16   counterclaims in Indiana, rather than in the California Action where they belong.  It

17   will not be any more or less convenient for the parties to litigate in California, as

18   opposed to Indiana.  This Court obtained jurisdiction first, and neither case has

19   progressed at all.  This case involves routine application of state contract and tort law,

20   and does not involve any "rare circumstances."  Indiana cannot adequately vindicate

21   Personnel's claims or protect its rights because Personnel has not asserted any claims

22   in Indiana.  Personnel did not engage in any forum shopping by filing its causes of

23   action regarding approximately $45 million in California workers' compensation

24   claims in California when no other action was pending.

25         *a.  There is no res judicata over which one court has obtained jurisdiction,*

26         *which weighs against abstention.*

27         In the *Colorado River* context, the fact that a state court has already assumed

28   jurisdiction over real property would weigh in favor of a federal court abstaining from

exercising its concurrent jurisdiction over that property.  There is no real property at issue in either this case or the Indiana Action.  [Motion, p. 18:21].  Therefore, this factor weighs against a stay.  *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) ("[t]he absence of this factor is not, however a 'neutral item, of no weight…[r]ather, the absence of this first factor weighs *against* abstention") (italics supplied).

        b.  <u>Any piecemeal litigation was created by Protective filing its compulsory counterclaims in Indiana and a stay will not prevent this Court from being required to adjudicate Personnel's claims, which precludes a stay.</u>

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, (9th Cir. 1988) 843 F.2d 1253, 1258.  "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance." *ScripsAmerica*, 56 F.Supp.3d at 1149, *quoting R.R. Street*, 656 F.3d at 980.  "Rather, the case must raise a special concern about piecemeal litigation, **which can be remedied by staying or dismissing the federal proceeding**." *Id.* at 1149 (bold and italics supplied, internal quotations omitted), *quoting Madonna*, 914 F.2d at 1369.  Even where the federal litigation "will unquestionably involve addressing many of the same, if not all of the same, issues that are being litigated in state court," "concern for avoidance of piecemeal litigation weighs in favor of a stay only when there is evidence of a strong federal policy that all claims should be tried in the state courts…" *Id.* (internal quotations omitted)*, quoting Melt Franchising, LLC v. PMI Enterprises, Inc.,* No. CV 08–4148 PSG (MANx), 2008 WL 4811097, *3 (C.D.Cal. Oct. 27, 2008).

      Protective's discussion of the issues raised by the complaints in California and Indiana never pierces the most superficial and conclusory layer of analysis, and boils down to the contention that there will be piecemeal litigation because both parties allege that the other did different things to breach the same contract in different fora. Protective's argument is entirely that "the gravamen of both actions is the extent to

13

1   which the parties complied" with the "various agreements" [Motion, p. 14:11]; that

2   this Court will address "substantially identical claims regarding the parties'

3   performance" [Motion, p. 14:15]; and that "[t]he alleged breaches of the Insurance

4   Contracts alleged by [Personnel] will have to be resolved in the Indiana Action"

5   [Motion, p. 14:19].

6       None of these contentions are true.  Personnel's allegations in the California

7   Complaint are that Protective breached the policies and committed a tort by

8   mishandling the claims covered by the policies.  Protective asserts no claims in the

9   California Action.  Therefore, the gravamen of California Action is that Protective

10  failed to comply with its obligations.  Protective's allegation in the Indiana Complaint

11  is that Personnel breached the polices, a General Agreement of Indemnity, and a

12  Collateral Agreement by failing to pay what is allegedly owed under those

13  agreements.  Personnel asserts no claims in the Indiana action.  Therefore, the

14  gravamen of the Indiana Action is that Personnel failed to pay Protective as allegedly

15  required.  It is simply not true that the issue in "*both* actions is the extent to which the

16  parties complied" with their obligations.  The same contract is alleged, but the rights

17  to be vindicated and the alleged wrongdoing are entirely different.

18      Similarly, it is not true that this Court or the Indiana court "will address

19  substantially identical claims regarding the parties' performance."  The Indiana

20  Action has absolutely nothing to do with Protective's performance, and there is no

21  allegation in the Indiana action that Protective did not perform.  The California Action

22  has nothing to do with Personnel's performance, and there is no allegation in

23  California that Personnel did not perform.  Likewise, the "alleged breaches" alleged

24  by Personnel do not "have to be resolved in the Indiana Action" because they have

25  not been pleaded there, and Personnel is under no obligation to file them there *even if*

26  *the Court were to grant the stay.*

27      Additionally, "the decision to invoke *Colorado River* necessarily contemplates

28  that the federal court will have nothing further to do in resolving any substantive part

14

of the case….”  *Moses H. Cone Memorial Hospital v.  Mercury Construction Corp.*, 460 U.S. 1, 28 (1983) (“*Moses*”).  Personnel’s affirmative tort and breach of contract claims are not at issue in Indiana and will not be resolved in Indiana.  As noted, above, in Section III(C)(1), resolution of Protective’s Indiana claims will not have a *res judicata* effect on Personnel’s California claims.  Therefore, even if a stay were granted, and the Indiana Action were completed, this Court would still have to take up Personnel’s claims at a later date and adjudicate Personnel’s claims for breach of contract and tort remedies.  Further, let it not be overlooked that ***Protective*** guaranteed that this litigation will be resolved in a piecemeal fashion by filing its compulsory counterclaims in Indiana rather than in this Court.

Finally, it was Protective’s burden to establish “a strong federal policy that all claims should be tried in the state courts.”  They have not endeavored to identify any such policy and have provided no evidence of such a policy.

For these reasons, this factor weighs strongly against a stay.

c. <u>The federal forum is not any more, or less, inconvenient than the parties litigating this multi-state insurance dispute in any other forum, which weighs against a stay.</u>

This dispute arises under workers’ compensation policies covering employees in 42 states and involving thousands or tens of thousands of individual transactions and decisions related to Protective’s handling of nearly $60 million in workers’ compensation claims.  *All* of the forums in *all* of the states are inconvenient in some respect with respect to the workers’ compensation claims in the other states.  Fortunately, and in large part owing to the idiosyncrasies of the California workers compensation system and laws, 4,351 of the 6,579 claims made under the polices were made by workers employed in California [Decl. Barnett, ¶7], which claims account for approximately $45 million of the $58 million in total claims [Decl. Barnett, ¶8]. However, the relevant question in a *Colorado River* analysis is <u>not</u> “whether the party opposing the stay can demonstrate that the federal forum is a better or more convenient forum.  Rather, it is whether the inconvenience of the federal

1  forum is *so great* that this factor points towards abstention." *Germuhendislik Taahüt*

2  *Proje, Montag Nakliye, Turizm, Insaat, Imlat Ve Ticaret Limited Sirketi v. Mems*

3  *Precision Technology, Inc.*, No. CV 13-5019 PSG (PJWx), 2013 WL 12205502, *3

4  (C.D. Cal. Oct. 8, 2013) (italics by the court), *citing Madonna*, 914 F.2d at 1368.

5  When considering this factor, courts have looked to the location of evidence and the

6  availability of compulsory process over *non-party* witnesses.  *Id.*

7       Workers' compensation claims-mishandling lawsuits assert one basic wrong –

8  the insurance company failed to comply with its contractual and common-law duties

9  to handle and administer properly the workers' compensation claims covered by the

10  policy.  Discovery and proof in claims-mishandling litigation is largely document,

11  expert, and *party-affiliated witness* based.  [Decl. Roxborough, ¶ 5].  Typically, the

12  first phase of discovery and proof in a claims-handling lawsuit is production by the

13  insurer of its claim and litigation files.  [*Id.*]  ***Universally***, the files are maintained

14  electronically and are produced by the insurer on computer discs or through file-

15  sharing internet sites.  [*Id.*]  The claim files are examined by an expert witness who

16  applies his or her expertise in handling workers' compensation claims under the laws

17  of a specific state to identify specific errors and patterns of mishandling, over-paying,

18  over-reserving, and improperly-settling the claims.  [*Id.*].

19       Following electronic discovery of the claim files and review by the expert, a

20  plaintiff typically will depose a small number of claims adjusters who actually made

21  decisions on specific files, the supervisor of those adjusters, or the person in charge of

22  implementing the insurer's claims-handling practices.  [*Id.*, ¶ 6].  These witnesses are

23  nearly universally employees of the insurer or controlled by the insurer.  [*Id.*]  Less

24  frequently, though likely to arise in a case like this involving thousands of claims,

25  files may raise issues that require discovery and testimony from the workers'

26  compensation claimant, his or her attorney, or the attorney hired by the insurance

27  company to represent it and the insured.  [*Id.*]  Virtually all of these non-party

28  witnesses naturally would reside in California because almost all the claims are

California claims, and would be subject to compulsory process here.  [Decl. Barnett, ¶9].

Protective asserts that the electronic claim files, its employee-witnesses, and *Personnel's* employee-witnesses are located in Illinois or Indiana.  [Motion, p. 12, Section E].  This does not establish that the inconvenience of litigating in California is "*so great*" as to warrant a stay.  The convenience of *Personnel's* witnesses is entirely irrelevant to the *Colorado River* analysis.  With respect to the convenience of Protective's employee-witnesses, the "inconvenience of requiring witnesses to travel to two separate locations" does not "cut[] in favor of abstention."  *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 498 (5th Cir. 2002).

Litigating in California will not be any more or less convenient than litigating in any other forum when it comes to the production of the electronic claim files, which represent nearly the entirety of the physical evidence in this case.  As a matter of practical fact, whether produced in discovery in the California Action or in the Indiana Action, Protective will export the same electronic claim files to the same hard drive and produce them *electronically*.  It is entirely irrelevant to the convenience of the California forum that Protective employees will be in Indiana or Illinois when they export the claim files to a hard drive *because they will have to take exactly the same steps regardless of whether they mail the hard drive containing the claim files to Personnel's counsel in California or in Indiana.*  It simply cannot be the case that a *Colorado River* stay is justified by the marginal increase in the cost of mailing a hard drive to California instead of mailing it to Indiana.

Therefore, this factor weighs against abstention.

d. <u>This case was filed first and neither case has progressed to any extent, which weighs against a stay.</u>

In *Seneca Insurance*, the Ninth Circuit held that "[b]ecause neither case has progressed significantly further than the other, and the federal action was filed more than two months prior to the state action, this factor weighs against abstention."

*Seneca*, 862 F.3d at 843.  Exactly the same is true here.  This action was filed a month before the Indiana Action and neither case has even proceeded past the pleading stage.  Therefore, this factor weighs against abstention.

> e.  *This case requires routine application of well-settled state law and does not entail any special circumstances, which weighs against a stay.*

Under *Colorado River* the "presence of federal-law issues must always be a major consideration weighing *against* surrender of jurisdiction…." *Seneca Insurance*, 862 F.3d at 844 (internal quotations marks omitted), *quoting Moses*, 460 U.S. at 26.  Whether one state or another's law will apply is completely irrelevant.  There are no federal-law issues in this case, which lessens the importance of this factor.  *R.R. Street*, 656 F.3d at 981 (discussing adequacy-of-state-court factor, "[l]ike source of law…, this factor is more important when it weighs in favor of federal jurisdiction").   However, "the presence of state-law issues may weigh in favor of that surrender only in some rare cases." *Id.*  "The existence of state law issues, by itself, does not outweigh the federal court's obligation to provide prompt resolution of all claims before it…" *ScripsAmerica*, 56 F.Supp.3d at 1151.  Where state-law claims "involve routine issues of state law that [the federal court] is fully capable of deciding, there are no 'rare circumstances'…that would justify a stay." *Id.*, *citing Madonna*, 914 F.2d at 1370; *Melt Franchising, LLC*, 2008 WL 4811097, *3 (finding factor weighed against dismissal or stay because state law claims were routine).

Personnel's claims in this action assert only state-law breach of contract and insurance bad-faith claims.  The law regarding claims mishandling cases has been settled for more than 25 years.  *See, e.g., Notrica v. State Compensation Insurance Fund*, 70 Cal.App.4th 911 (1999); *MacGregor Yacht Corp. v. State Compensation Insurance Fund*, 63 Cal.App.4th 448 (1998); *Security Officers Service, Inc. v. State Compensation Insurance Fund*, 17 Cal.App.4th 887 (1993).

A useful data point for this conclusion is *R.R. Street*, 656 F.3d at 980-981, which involved claims by insureds, insurers, and third-party claimants filed in

1  multiple federal and state jurisdictions.  *Id.* at 971.  Even in these circumstances

2  which were vastly more complicated in terms of parties and forums, the Ninth Circuit

3  concluded "[t]he complexity of [the action]…stems from the number of policies and

4  insurers, not the type of law involved in the action.  Because the cases here involve

5  'routine issues of state law,' such as breach of contract, indemnification and

6  subrogation, this factor does not weigh against jurisdiction."  *Id.*, *citing Madonna*,

7  914 F.2d at 1370.  Indeed, "[c]ases implicating only 'routine issues of state law –

8  misrepresentation, breach of fiduciary duty, and breach of contract – which the

9  district court is fully capable of deciding' do not entail 'rare circumstances'

10  counseling in favor of abstention."  *Seneca*, 862 F.3d at 844, *quoting Madonna*, 914

11  F.2d at 1370.

12      Protective's argument regarding this factor misses completely the

13  considerations the Court is to evaluate.  Instead, they highlight the residences of the

14  parties; the location at which they contend the policies were negotiated, executed, and

15  performed; and the presence of forum-selection and choice-of-law provisions in an

16  ancillary agreement that has nothing to do with the claims Personnel asserted in the

17  Complaint.  As discussed in Section III(D) below, this ancillary agreement is void and

18  unenforceable under California law, but even if the ancillary agreement were not

19  illegal, the larger deficiency is that *no Colorado River factor is dependent in any way*

20  *on the presence or absence of a forum-selection or choice-of-law provision*.

21      This Court is fully capable of resolving Personnel's breach of contract and

22  insurance bad faith claims under well-settled principles of state law *even if Protective*

23  *is correct that Indiana law is controlling*.  These claims "ultimately boil down to

24  arguments about…breach of contract…, none of which raises the 'rare circumstances'

25  required for the rule of decision factor to weigh toward abstention."  *Seneca*, 862 F.3d

26  at 844.

27  / / /

28  / / /

1
2

      f.  *Indiana cannot adjudicate any of Personnel's claims because none have been or must be filed there, which makes Indiana an inadequate forum, and weighs against a stay.*

3           With respect to the adequacy of the Indiana court, Protective's argument is that

4 this factor weighs in favor of abstention if the Indiana court is competent and could

5 resolve the claims Personnel asserts here.  Indeed, they do no more in their Motion

6 than tell the Court that the Indiana court is capable of "adequately protect[ing]

7 Personnel's] rights." [Motion, p. 16:15].  Protective ignores the fact that Personnel

8 has not filed any claims in Indiana that the Indiana court could resolve, thereby

9 transforming its argument into "if, hypothetically, Personnel were to file its claims in

10 Indiana, the Indiana court could adequately resolve them."  Given the presumption

11 that state courts have "inherent authority, and are thus presumptively competent, to

12 adjudicate" federal claims [*Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)], Protective's

13 position has two logical conclusions that are obviously wrong: (1) the *only* time this

14 factor weighs against abstention is in cases of exclusive federal jurisdiction and (2)

15 this factor *always* weighs in favor of abstention in diversity cases concerning only

16 state-law claims.

17           Here, the Indiana Action *cannot adequately protect Personnel because*

18 *Personnel has no claims there and, therefore, cannot obtain the damages it seeks in*

19 *this action.*  Moreover, *even if Personnel had asserted claims in Indiana* this factor

20 would not weigh in favor of abstention.  "[T]he Ninth Circuit 'has not applied this

21 factor *against the exercise* of federal jurisdiction, only *in favor* of it.'"

22 *ScripsAmerica*, 56 F.Supp.3d at 1152, *quoting Madonna*, 914 F.2d at 1370.  "[T]he

23 possibility that the state court proceeding might adequately protect the interests of the

24 parties is not enough to justify the district court's deference to the state action."  *Id.*

25 This factor, like choice of law, is more important when it weighs in favor of federal

26 jurisdiction."  *Id.*  "Thus, because these claims involve state law issues, this factor is

27 of little or no weight here" or is "unhelpful."  *Id.*

28           For these reasons, this factor does not weigh in favor of a stay.

g. *Personnel did not engage in any forum shopping, and the only reason this Motion is before the Court is because Protective forum shopped by filing its compulsory counterclaims in Indiana, which weighs against a stay.*

"When evaluating forum shopping under *Colorado River*, [the court is to] consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca Insurance*, 862 F.3d at 846, *citing Nakash*, 882 F.2d at 1417 (finding forum shopping where, after three-and-a-half years of litigation in a case that was proceeding to its detriment, one party sought a "new forum for [its] claims"); *Am. Int'l Underwriters*, 843 F.2d at 1259 (finding forum shopping where, after two-and-a-half years, a party "abandon[ed] its state court case solely because it believe[d] that the Federal Rules of Evidence [we]re more favorable to it than the state evidentiary rules"). "It typically does not constitute forum shopping where a party "acted within his rights in filing a suit in the forum of his choice…." *Seneca Insurance* at 846, citing *Madonna*, 914 F.2d at 1371. Thus, concerns regarding forum shopping typically arise when a party has litigated extensively in state court, received unfavorable rulings in state court, and then re-files its case in federal court in order to obtain some advantage or avail itself of a more favorable rule in federal court. At the core of these issues is a party *purposefully availing* itself of the federal forum in order to obtain an advantage after failing in a state court.

As described elsewhere, *Personnel did not choose this federal forum; Protective did*. Personnel filed this action in California state court. Moreover, Personnel did not re-file any state court litigation in federal court after state litigation had proceeded for a significant amount of time or after significant adverse rulings. *The Los Angeles Superior Court action was the first lawsuit between the parties filed in any court in the country*. There have been no rulings whatsoever in any case. For these reasons, a finding that Personnel has engaged in forum shopping, or that allowing Protective to proceed in this action would encourage others to engage in

1   forum shopping, is impossible.

2        On the other hand, it is manifest that Protective is engaging in exactly the

3   forum shopping of which it accuses Personnel.  As noted elsewhere, Protective's

4   entire Indiana lawsuit is a compulsory counterclaim in this case.  It arises entirely out

5   of the same contracts alleged in Personnel's California Complaint and Protective had

6   not pleaded its claims in any other court when Personnel filed the Los Angeles

7   Superior Court action.  Allowing Protective to divest Personnel of its chosen forum,

8   the Los Angeles Superior Court, and then to divest Personnel of its chosen forum

9   state, by simply filing compulsory counterclaims in a state with virtually no

10  connection to the claims at issue in Personnel's complaint is plainly inappropriate.

11       For these reasons, this factor weighs strongly against abstention.

12  **D.  <u>The Court Should Not Entertain Any Argument Regarding A Transfer.</u>**

13       Protective noticed a Motion to Dismiss under Rule 12(b)(1) for lack of subject

14  matter jurisdiction.  [Dkt. No. 1, Notice of Motion, p. 1:06].  In its Notice of Motion,

15  and its Memorandum of Points and Authorities in support of the Motion, Protective

16  asked the Court to ***stay*** or ***dismiss*** this case under *Colorado River*, or, in the

17  alternative, to ***dismiss*** this case based on the doctrine of *forum non conveniens*.  [*Id.* at

18  p. 1:07].  Protective did <u>not</u> notice a motion to transfer pursuant to 28 U.S.C. § 1404,

19  did <u>not</u> make any argument in support of a transfer, did <u>not</u> request a transfer, and

20  used the word "transfer" only twice in its papers, neither instance requesting transfer.

21  Dismissal is appropriate only where the alternative forum is abroad.  "Section 1404(a)

22  has replaced *forum non conveniens* where ***transfer*** is sought to another state."  Philips

23  & Stevenson, <u>Federal Civil Procedure Before Trial, California & 9th Cir. Edition</u>

24  (The Rutter Group April 2019 Update), ¶4:712 (bold and italics supplied); *Atlantic*

25  *Marine Const. Co., Inc. v. U.S. District Court for Western Dist. of Texas*, 571 U.S. 49,

26  60 (2013) (forum-selection clause "*may be enforced through a motion to transfer*

27  *under §1404(a)*" and "Congress has replaced the traditional remedy of outright

28  dismissal with transfer") (italics supplied).

Despite not requesting a transfer, Protective invokes what it characterizes as a "mandatory forum selection clause" in the General Agreement of Indemnity (the "Indemnity Agreement").  [*See, e.g.,* Motion, p. 1:13; 2:26.  Although it refers to the provision at least ten times, Protective fails to quote the language of the provision, instead preferring to characterize it as a provision that "designates the courts of Indiana as the exclusive jurisdiction for filing any dispute." [Motion, p. 5:17].

Quotation of the actual provision reveals this characterization to be subterfuge.  The provision at issue reads:

> The parties hereto agree that this ***transaction*** shall be governed by the rules of law of the State of Indiana.  Also, all parties to this agreement whether foreign or domestic agree to ***submit to the jurisdiction*** of the courts of the State of Indiana all matters involving a dispute under ***this agreement*** and specifically understand and desire that a judgment by [*sic*.] court of state of Indiana or District Court of the United States of America will be enforceable worldwide.

[Decl. Schmiedt, ¶15, Ex. F, ¶15 (bold and italics supplied)].

Even if the Court were inclined to grant relief <u>not</u> requested, transfer under 28 U.S.C. § 1404(a), the forum-selection provision in the Indemnity Agreement does not counsel in favor of a dismissal, stay, or transfer because: (1) the Indemnity Agreement is an illegal contract and none of its provisions may be enforced; (2) the forum-selection provision in the Indemnity Agreement is permissive not mandatory; and (3) by its own terms, the forum-selection portion of the Indemnity Agreement applies only to the Indemnity Agreement, and not the polices that form the entire basis for Personnel's claims in the California Action.

The Indemnity Agreement was not filed with, nor approved by, the California Department of Insurance.  [Decl. Roxborough, ¶10, Ex. 1].  Insurance Code section 11658 and California Code of Regulations, title 10, section 2268 require all insurance-policy forms, including those containing dispute-resolution agreements, to be filed with, and approved by, the Insurance Commissioner before being issued.  Un-filed policy forms, endorsements, and collateral or ancillary agreements, which the

Indemnity Agreement certainly is, consistently have been held to be void and unenforceable as a matter of law under *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal.App.5th 1096 (2018); *Luxor Cabs, Inc. v. Applied Underwriters, Inc.*, 30 Cal.App.5th 970 (2018); *Jackpot Harvesting, Inc. v. Applied Underwriters, Inc.*, 33 Cal.App.5th 719 (2019) **and by this District Court** in *American Zurich Ins. Co. v. Country Villa Service Corp.*, No. 14-cv-03779-RSWL-AS, 2015 WL 4163008 (C.D. Cal. Jul. 9, 2015).  Moreover, the California Department of Insurance, who has unswervingly held such contracts to be void as a matter of law, has incepted an administrative appeal addressing whether the Indemnity Agreement an illegal contract.  [Decl. Roxborough, ¶14-16].[8]  Thus, the dispute-resolution provisions in the Indemnity Agreement are void and unenforceable.

Second, and independently, the forum-selection provision in the Indemnity Agreement is merely permissive, requiring only that the parties "agree to ***submit to the jurisdiction***" of Indiana courts.  Nothing requires that Indiana be the "sole," "exclusive," or "only" venue for disputes and no specific venue in any county in Indiana is required.  "A forum selection clause is permissive when the parties merely consent to bestow jurisdiction on a court without stating that the court has *exclusive jurisdiction to hear their disputes*."  *Calisher & Associates, Inc. v. RGCMC, LLC*, No. CV08-06523-MMM(Ex), 2008 WL 4949041, *4 (C.D. Cal. Nov. 17, 2008) (italics supplied); *Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) ("[t]o be mandatory, a clause must contain language that clearly designates a forum as the exclusive one"); *Radian Int'l, LLC v. Alpina Ins. Co.*, C-04-4537 SC, 2005 WL 1656884, *1 (N.D. Cal. Jul. 14, 2005) (Ninth Circuit "does not enforce 'permissive' clauses which merely grant jurisdiction to a particular forum without ruling out concurrent jurisdiction in other forums").

---

[8] In *In re The Matter of Davidson Hotel Company, LLC*, the Insurance Commissioner specifically held that the choice-of-law and forum-selection provisions in a similar side agreement modified the policies in violation of California Insurance Code section 11658, rendering them void and unenforceable as a matter of law.  [Decl. Roxborough, ¶16, Ex. 7, pp. 36-37].

Moreover, a permissive forum-selection provision is made mandatory only when "coupled with an express waiver of venue objections" or a "waiver of any claims of *forum non conveniens*...." *Technology Credit Corp. v. N.J. Christian Academy, Inc.*, 307 F.Supp.3d 993, 1007-1008 (N.D. Cal. 2018).  No such waiver is present here.

Finally, and also independently, Paragraph 15 of the Indemnity Agreement clearly distinguishes between the choice-of-law provision, which states that "***this transaction*** shall be governed by" Indiana law, and the jurisdictional provision, which applies only to "dispute[s] under ***this agreement***..."  The ***transaction*** contemplated by the Indemnity Agreement is issuance of insurance policies. [Decl. Schmiedt, ¶15, Ex. F, p. 1, first "AND WHEREAS," "upon condition that this instrument be executed, Protective has issued...policies...."]].  However, "this agreement" is merely the Indemnity Agreement.  The Complaint does not mention, or rely on in any fashion, the Indemnity Agreement.  Accordingly, the Indemnity Agreement's permissive forum-selection clause is applicable to the claims asserted in the California Action.

## IV.   CONCLUSION

Protective's Motion to dismiss this case under both *Colorado River* and *forum non conveniens* must be denied.  Protective's Motion to stay this case under *Colorado River* must also be denied.  Under no circumstances should the Court grant relief that was not requested, including transferring this case.

DATED: September 30, 2019          ROXBOROUGH, POMERANCE, NYE
                                                        & ADREANI, LLP


                                          By:  */s/ Joseph C. Gjonola*
                                                  NICHOLAS P. ROXBOROUGH
                                                  JOSEPH C. GJONOLA
                                                  RYAN SALSIG
                                                  DONNA M. LEUNG
                                                  Attorneys for Plaintiff

PERSONNEL'S OPPOSITION TO PROTECTIVE'S MOTION TO DISMISS OR STAY PURSUANT TO FED. R. CIV. PROC. 12(B)(1)